IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| F. CHRISTOPHER BRUSSOW,<br><br>                    Plaintiff,<br><br>vs.<br><br>CONSTANTINE RODIN, NATHAN SWENSEN, SALT LAKE CITY,<br><br>                    Defendants. | ORDER & MEMORANDUM DECISION<br><br><br><br>Case No. 2:04 CV 459 |

In the early morning hours following a birthday celebration, Plaintiff F. Christopher Brussow was arrested by Salt Lake City police officers for public intoxication and for being drunk in and around a vehicle. Nearly four years later, Mr. Brussow filed this action under 42 U.S.C. § 1983, alleging that the officers who arrested him violated his constitutional rights. Mr. Brussow also named Salt Lake City in the action.

The court referred the matter to United States Magistrate Judge Paul M. Warner[1] under 28 U.S.C. § 636(b)(1)(B). After litigating disputes over proper service and the sufficiency of Mr. Brussow's Complaint, Defendants eventually moved for summary judgment on Mr. Brussow's claims. After reviewing the parties' filings and holding a hearing on the summary judgment motion, Judge Warner concluded that Defendants' motion for summary judgment should be granted and issued a Report and Recommendation to that effect.

---

[1]Originally, this case was referred to United States Magistrate Judge David O. Nuffer. Judge Warner took over the referral in February of 2006.

Mr. Brussow filed an objection to Judge Warner's report, essentially claiming that Judge Warner failed to draw all reasonable inferences from the facts in favor of Mr. Brussow, the nonmoving party. The court held a hearing on Mr. Brussow's objection and has reviewed Judge Warner's report, as well as all relevant filings submitted by the parties. Now being fully informed, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

### Standard for Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252. See also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

### Background

In light of the standard applicable to motions for summary judgment, the following factual exposition relies almost exclusively on Mr. Brussow's statement of facts. The court only

utilizes facts presented by Defendants to the extent that Mr. Brussow failed to particularly controvert those facts.[2]

Around 1:30 a.m., Officers Constantine Rodin and Nathan Swensen observed a white car skidding and squealing around a street corner while traveling at an excessive speed. It is disputed whether the officers were finishing a traffic stop or investigating a domestic complaint at the time they observed the vehicle, but that dispute is immaterial to the resolution of the present motion.

The officers then noticed that the white car was parked on the roadside near the area where they had first observed it. The officers pulled up behind the car and saw Jennifer Rost exit from the passenger side of the vehicle. Mr. Brussow was sitting in the driver's seat, but the vehicle was not running and the keys were not in the ignition. According to Mr. Brussow, Ms. Rost was driving the vehicle and he was in the driver's seat when the officers arrived only because he and Ms. Rost had returned to the vehicle, after they initially parked, to retrieve a portable compact disk player.

Mr. Brussow admits that he had been drinking that night, although he controverts the officers' recollection that he needed assistance walking and exhibited other signs of intoxication, such as slurred speech. Mr. Brussow contends that he may have been talking slowly, but argues

---

[2]As noted by Judge Warner in his Report and Recommendation, counsel for Mr. Brussow failed to follow Federal Rule of Civil Procedure 56 and the corresponding local rule, DUCivR 56-1, when preparing his memorandum in opposition to Defendants' summary judgment motion. Local rule DUCivR 56-1 requires a memorandum opposing summary judgment to "begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists." DUCivR 56-1(c). Further, "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record on which the opposing party relies and, if applicable, must state the number of the movant's fact that is disputed." Id. Rather than oppose Defendants' facts in accordance with the local rule, counsel for Mr. Brussow submitted an affidavit outlining--often in an argumentative and conclusory manner--Mr. Brussow's recollection of the facts. While the court could simply deem each of Defendants' stated facts admitted under DUCivR 56-1(c), the court will treat Mr. Brussow's affidavit as if it were incorporated into his opposition memorandum. But, as stated, the court will deem admitted those facts not particularly controverted in the affidavit submitted by Mr. Brussow.

that any slow speech on his part was attributable to his general fatigue and not alcohol consumption.  Importantly, Mr. Brussow does not controvert the fact that he and Ms. Rost told officers that they had been celebrating Mr. Brussow's birthday and that Mr. Brussow had been drinking.

After talking with Mr. Brussow and Ms. Rost, Officers Rodin and Swensen placed Mr. Brussow under arrest for public intoxication and being drunk in and around a vehicle.  The officers moved Mr. Brussow's arms behind his back and placed him in handcuffs.  Mr. Brussow claims that he informed the officers that the handcuffs were too tight and were causing him pain.  Without loosening or otherwise adjusting the handcuffs, the officers placed Mr. Brussow in the backseat of their patrol car.

The officers then continued their conversation with Ms. Rost.  Meanwhile, Mr. Brussow, allegedly to relieve the discomfort of the handcuffs, managed to slip the handcuffs down his legs and then moved the handcuffs under his feet, ultimately succeeding in placing his hands in his lap.  Mr. Brussow made no attempt to actually remove the handcuffs from his wrists, and, according to Mr. Brussow, he then leaned his head against the window, closed his eyes, and "nodded off."  (See Plf.'s Aff. & Counter-Statement of Facts ¶ 8.)

The officers soon noticed that Mr. Brussow had moved the location of his handcuffs.  According to Mr. Brussow, the officers dragged him from the patrol car and threw him to the ground.  One officer then pinned Mr. Brussow's head to the pavement while the other officer forcibly moved Mr. Brussow's hands back under his legs until his arms were once again behind his back.  The officers concede that Mr. Brussow did not actively resist the repositioning of his handcuffs.  The police record notes that Mr. Brussow's right wrist was swollen and that Mr. Brussow had abrasions on both hands as well as on additional locations on the right side of his

body after his arrest.  (See Salt Lake Police Dept. Gen. Offense Hardcopy 5, attached as Ex. B to Am. Memo. in Supp. of Mot. for Summ. J.)

Mr. Brussow filed this § 1983 action against Officer Rodin, Officer Swensen, and Salt Lake City, alleging that he was a victim of an unjustified arrest and that the arresting officers used excessive force when they took steps to return his hands to the small of his back. Defendants filed for summary judgment arguing that Mr. Brussow does not have a valid claim against Salt Lake City because there is no evidence indicating that the alleged violation of his constitutional rights was a result of a custom or policy of the city.  Additionally, Defendants claim that Officers Rodin and Swensen are entitled to qualified immunity precluding Mr. Brussow's claims against them.

Mr. Brussow has failed to provide sufficient evidence that any of the alleged constitutional violations resulted from a policy or custom of Salt Lake City.  Accordingly, Mr. Brussow cannot succeed on his claims against Salt Lake City.  Additionally, the court concludes that Mr. Brussow's constitutional rights were not violated by his arrest.  But, as the record now stands, Defendants' motion for summary judgment on Mr. Brussow's claim of excessive force cannot be granted.

## Analysis

I. **Mr. Brussow Has Failed to Establish that the Alleged Constitutional Violations Were a Direct Result of a Policy or Custom of Salt Lake City**

To establish liability against a municipal government for an alleged civil rights violation, a plaintiff must show that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monnell v. Dep't of Social Servs., 436 U.S. 658, 690-91

(1978). "The teachings of Monnell and its progeny proscribe the attachment of vicarious liability to a municipality merely because the municipality employed the individual who committed a constitutional violation." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002).

The evidence submitted by Mr. Brussow in support of his claim of municipal liability is confined solely to his bald statement that "[o]n three occasions [he] observed Salt Lake City police officers routinely use of [sic] excessive force and hurt young people for no arrestable offenses when officers got frustrated and angry." (Plf.'s Aff. & Counter-Statement of Facts ¶ 19.) Although that statement is presumably based upon Mr. Brussow's personal knowledge, it is so conclusory and self-serving that the statement alone is insufficient to preclude summary judgment. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Material factual disputes cannot be resolved on summary judgment based on conflicting affidavits. To come within the protection of this rule, however, the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."). Mr. Brussow has provided no details whatsoever that enable a determination of the probative value of his alleged knowledge that Salt Lake City police officers used impermissible levels of force on three other occasions. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (nonmovant must come forward with "specific facts showing that there is a genuine issue for trial" (internal quotation omitted)); Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997) ("The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.").

Mr. Brussow's single conclusory sentence on this issue is insufficient to preclude the

entry of summary judgment on behalf of Salt Lake City.  Accordingly, the court adopts Judge Warner's recommendation on this point and grants Salt Lake City summary judgment.

## II.       Officers Rodin and Swensen's Claim of Qualified Immunity

Government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Guffey v. Wyatt, 18 F.3d 869, 871 (10th Cir. 1994).  In order to prevail against a defense of qualified immunity in a summary judgment motion, a plaintiff must first assert the violation of a constitutional or statutory right.  See Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997).  Second, a plaintiff must show that the "right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated the right." Id. Once a defendant raises the defense of qualified immunity, it is the plaintiff's burden to show that the law was clearly established when the alleged constitutional violation occurred, and to present facts or allegations sufficient to show that the official violated the law.  See Guffey, 18 F.3d at 871.  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001).

Mr. Brussow alleges that his constitutional rights were violated by his arrest and by the officers' use of excessive force.

*The Arrest*

Mr. Brussow alleges that Officers Rodin and Swensen violated his constitutional rights when they arrested him for public intoxication and being drunk in and around a vehicle.  Mr. Brussow seemingly challenges his arrest on the ground that his arrest was not supported by

7

probable cause. "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." Olsen, 312 F.3d at 1312 (citing Tenn. v. Garner, 471 U.S. 1, 7 (1985)). The uncontroverted facts belie Mr. Brussow's position.

It is undisputed that Mr. Brussow informed officers that he had been drinking. In fact, Mr. Brussow acknowledges that he was intoxicated, taking exception only to the officers' statements that he was "extremely" intoxicated. (See Plf.'s Aff. & Counter-Statement of Facts ¶ 5 ("I was not extremely intoxicated.").) Mr. Brussow concedes that he may have been speaking slowly, although he attributes any slow speech to fatigue. Further, Mr. Brussow does not contradict the officers' contention that he smelled strongly of alcohol. Rather, Mr. Brussow merely takes exception to the officers' failure to identify the type of alcohol producing the odor. (See id. ("[Officer] Rodin did not identify what kind of 'alcohol' he smelled 'strongly' on my breath. Different kinds of alcohol smell differently.").)

In short, Mr. Brussow admits that he was intoxicated, admits that the officers were informed of his intoxication, admits that his conversation with the officers occurred on a public street, and admits that he was in the driver's seat of the car when the officers arrived. Nevertheless, Mr. Brussow claims the arresting officers violated his constitutional rights because there is no evidence to suggest that Mr. Brussow posed a danger to himself or others at the time of his arrest.

The only legal authority that Mr. Brussow advances in support of this proposition is the case of Anaya v. Crossroads Managed Care Systems, 195 F.3d 584 (10th Cir. 1999). In Anaya, the Tenth Circuit concluded that intoxicated persons could not be seized and taken to a detoxification facility on the basis of intoxication alone. See id. at 591. The court acknowledged

that an entirely different question was presented by situations involving an arrest for an alleged crime. See id.  Here, the uncontroverted facts establish that Officers Rodin and Swensen possessed probable cause to arrest Mr. Brussow for the crimes of public intoxication and being drunk in and around a vehicle.  Accordingly, Mr. Brussow suffered no constitutional violation as a result of his arrest.

*Excessive Force*

Mr. Brussow argues that even if his arrest was permissible, the police nevertheless used excessive force when repositioning his handcuffs after he moved his hands to his lap.  "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not '"objectively reasonable"' in light of the facts and circumstances confronting [him].'" Olsen, 312 F.3d at 1313-14 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  When assessing the reasonableness of an officer's use of force, the court views the facts "from the perspective of a reasonable officer on the scene," and recognizes that officers are sometimes "forced to make split-second judgments." Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001) (internal quotation omitted).  "The reasonableness standard . . . implores the court to consider factors including the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety, and the suspect's efforts to resist or evade arrest." Olsen, 312 F.3d at 1313.

Viewing the facts in the light most favorable to Mr. Brussow, the question is whether it was objectively reasonable under the circumstances for officers--after noticing that Mr. Brussow had managed to move his hands from his behind his back to his lap--to remove Mr. Brussow from the back of the control car, throw him to the ground, and pin him to the ground while forcibly repositioning his handcuffs.

Mr. Brussow alleges that he was completely compliant and cooperative throughout the arrest process.  Further, Mr. Brussow asserts that after he managed to moved his hands to his lap, he leaned his head against the window and "nodded off."  For the purposes of summary judgment, Mr. Brussow's assertions are accepted as true.

The severity of the alleged crimes for which Mr. Brussow was arrested is relatively minor.  But significant concerns about officer safety are raised by the undisputed fact that Mr. Brussow, without permission, moved his hands from the small of his back to his lap.  Common sense dictates that Mr. Brussow posed a more significant safety threat to officers once he managed to remove his hands from behind his back.  Additionally, the officers on the scene could have reasonably interpreted Mr. Brussow's actions as an attempt to resist the officers' attempts to restrain him.  All of these concerns were magnified by Mr. Brussow's own admission that he was intoxicated.

Nevertheless, on these facts a jury could conceivably conclude that Officers Rodin and Swensen used excessive force when repositioning Mr. Brussow's handcuffs.  Mr. Brussow was already in the patrol car when he moved his handcuffs and alleges that he made no effort to actually remove the handcuffs, only to reposition them.  This, combined with the fact that Mr. Brussow was not actively attempting to escape and, in fact, had "nodded off" in the patrol car, all significantly undercut the officers' interest in quickly and forcibly repositioning the handcuffs.

The officers' recollection of the events leading up to the repositioning of Mr. Brussow's handcuffs varies from that of Mr. Brussow.  Ultimately, a jury may find the officers' testimony more credible.  But when considering a motion for summary judgment, the court must not weigh issues of credibility.  It is enough that Mr. Brussow has alleged sufficient facts to enable a jury to conclude officers subjected him to excessive force.

The Tenth Circuit views the objective reasonableness standard as "clearly established" for the purposes of a qualified immunity defense. See id. Accordingly, Mr. Brussow has successfully rebutted the officers' reliance on qualified immunity as a ground for summary judgment and, therefore, Defendants' motion for summary judgment on that claim is denied.

## Conclusion

Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Specifically, Defendants are granted summary judgment on Mr. Brussow's claim against Salt Lake City and on Mr. Brussow's claim that his constitutional rights were violated by his arrest. Defendants' motion for summary judgment on Mr. Brussow's excessive force claim is denied.

SO ORDERED this 13th day of July, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge